# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JEFFREY B.D. JACOBS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 14 cv 3497 |
| v. | ) |
| | ) Judge Sharon Johnson Coleman |
| NANCY A. BERRYHILL, ACTING | ) |
| COMMISSIONER OF SOCIAL SECURITY,[1] | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court are cross-motions for summary judgment [8, 16] arising from the Commissioner of Social Security's decision to deny plaintiff Jeffrey Jacobs' request for disability insurance benefits. Jacobs asks the Court to reverse the Administrative Law Judge's ("ALJ") determination that she is not disabled and entitled to benefits, or to remand for further proceedings. Defendant contends that the ALJ's decision should be affirmed. For the reasons stated herein, this Court grants Jacobs' motion and remands the matter for further consideration by the agency.

**Procedural History**

Jacobs applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, 42 U.S.C. §§ 423(d), 1381a, on May 24, 2011, alleging in both applications that he became disabled on April 1, 2008, due to "affective mood/mood disorders" (depression) and "anxiety related disorders". (Administrative Record ("A.R.") at 154, 158). The Social Security Administration denied the applications initially on June 27, 2011, and upon reconsideration on September 21, 2011. (A.R. at 69, 87). Jacobs timely filed a request for hearing and appeared before Administrative Law Judge (the "ALJ") on October 5, 2012. (A.R. at 33). The

---

[1] Pursuant to Rule 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin as Acting Commissioner of Social Security.

1

ALJ heard testimony from Jacobs, who was represented by counsel, as well as from vocational expert Pete D. Hardy III (the VE"). The ALJ found that Jacobs is not disabled because he can perform work as a kitchen helper, hand packager, or storeroom laborer. (A.R. at 17-28). The Appeals Council denied Jacobs request for review. (A.R. at 1-3). Jacobs seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner.

Jacobs argues that this Court should remand this matter because the ALJ failed to give the proper weight to the opinions of Jacobs' treating psychiatrist and therapist, and made an improper credibility determination. Pursuant to 42 U.S.C. § 405(g), Jacobs filed the complaint for judicial review now before this Court. For the reasons that follow, this Court finds that the ALJ's decision is not supported by substantial evidence and must be remanded for further consideration.

**Factual Background**

Jacobs was born on June 18, 1971. (A.R. at 26). As of alleged disability onset date of April 1, 2008, Jacobs was 36 years old. Jacobs earned a law degree in 1998 and worked as an attorney prior to 2008. He was discharged from his last place of employment, a law firm, on March 30, 3007. (A.R. at 186).

*A. Relevant Medical History*

The first medical record available is the discharge summary from Leyden Family Service and Mental Health Center. (A.R. at 259-266). Jacobs presented at the facility on April 2, 2008, because he had been experiencing vegetative symptoms of depression for the past month. The psychiatric evaluation report from April 3, 2008, states that Jacobs was bereft and despondent and had been experiencing passive suicidal ideation. The evaluating physician, Richard S. Goldberg, M.D., noted that Jacobs reported having multiple vegetative symptoms of depression, including insomnia, a ten pound weight loss in the past month, a loss of interest in usual activities. He had been admitted to a psychiatric hospital at age 13 for depression. Dr. Goldberg diagnosed Jacobs with recurrent major

depression and mixed personality disorder with dependent and narcissistic features. He prescribed Lexapro and recommended counseling, psychotherapy of a supportive nature on an outpatient basis as soon as possible. (A.R. at 263-264).

The next record is from January 13, 2009, when Jacobs presented at the emergency room of Good Samaritan Hospital with suicidal ideation. (A.R. 269-271). The nursing intake notes states that Jacobs was experiencing depression and was feeling suicidal, hopeless and worthless. His appetite and sleep were poor. The nurse noted an intact memory with poor focus and concentration. (A.R. at 272). Good Samaritan Hospital transferred Jacobs to John J. Madden Mental Health Center the following day, where he was admitted for treatment. (A.R. at 281). Additional records from Resurrection Behavioral Health from January 2009-June 2011 reflect regular visits with therapists, primarily Michele Bailey, a Licensed Clinical Social Worker ("LCSW"), for recurrent major depressive disorder. (A.R. at 308-407). Also in the medical records are Dr. Haidari Shikari's progress notes from psychiatric evaluation and medical monitoring between February 7, 2011, and November 14, 2011. (A.R. at 431-434). On December 21, 2010, the Progress Note from Resurrection Behavioral Health states that it had been four months since Jacobs' last appointment, but that he wants to reengage in treatment despite his ongoing financial issues that caused him to suspend treatment. The note further reflects that "[w]ithout treatment this [client] would definitely decompensate needing a much higher level of care and rehospitalization." (A.R. at 360). The progress note from group therapy on February 9, 2011, states that Jacobs "is managing symptoms of Major Depressive Disorder Recurrent, Unspecified which causes clinically significant distress and impacts daily functioning." (A.R. at 374). On April 26, 2011, the therapist's progress note states that Jacobs presented with severe symptoms of depression (rumination about the past, tearful, increased sleep, low self-esteem) significantly impact client's functioning and he requires services to prevent further decompensation and hospitalization." (A.R. at 398).

The Psychiatric Review completed by a consultant for the State agency, Howard Tin, Psy.D., on June 27, 2011, found that an RFC (Residual Functional Capacity) assessment was necessary. (A.R. at 408). Dr. Tin found that Jacobs suffered from Major Depressive Disorder with Anxiety and Borderline Personality Traits. The Psychiatric Review further indicates that Jacobs had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of extended duration of decompensation. (A.R. at 418). Dr. Tin also completed the RFC Assessment. (A.R. at 422-425).

Dr. Shikari and Michele Bailey, LCSW, also each completed a medical assessment form on May 7, 2012, at the request of Jacob's attorney for the disability benefit application. (A.R. at 439-444). Dr. Shikari noted that he had been treating Jacobs for major depressive disorder since 2009 and that Jacobs' condition was unchanged in that time. Dr. Shikari noted that his prognosis for Jacobs was "guarded" because he is unable to afford psychotherapy. Dr. Shikari further noted that Jacobs has difficulty in social functioning due to the symptoms of his depression and that he is likely to decompensate if exposed to work setting and schedule. (A.R. at 440).

Michele Bailey performed a Mental Residual Functional Capacity Assessment, finding that Jacobs is moderately limited in all areas of understanding and memory; moderately limited in all areas of sustained concentration, except he is not significantly limited in his ability to carry out very short and simple instructions and is markedly limited in the ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at consistent pace without an unreasonable number and length of rest periods. (A.R. 441-442). Bailey also found moderate limitations in most areas of social interaction and in the ability to be aware of normal hazards and take appropriate precautions, and the ability to set realistic goals or make plans independently of others. (A.R. at 442). Bailey concluded that Jacobs' symptoms significantly impair

4

his ability to perform work activities within a schedule, make work-related decisions, and maintain regular attendance or punctuality. (A.R. at 443).

B. *The October 5, 2012, Hearing before the ALJ*

Jacobs and the vocational expert, Pete Hardy, testified at the hearing. (A.R. at 33-68). Jacobs testified to his work history as an attorney and the trouble he had maintaining that employment. He was fired from several jobs due to performance problems, "breakdowns," and attendance issues. Jacobs testified that law school was easier because attendance was less of an issue and evaluation was based on a single exam. Jacobs further testified about his socials relationships and obsessive behavior relating to his ex-girlfriend. The ALJ asked him to list his current medications: Fluoxetine and Alprazolam. (A.R. at 44). He also testified to having been prescribed at various times Lexapro, Wellbutrin, Cymbalta, and other anti-depressants. (A.R. at 44). The medications have caused dizziness and loss of concentration. (A.R. at 44). The ALJ asked him about the gaps in treatment and Jacobs explained that he does not have health insurance so his father pays for some of his medical care, but cuts in program funding rendered the treatment unaffordable. (A.R. at 47).

Jacobs testified to limitations on his daily life, including difficulty getting out of bed, crying a lot, difficulty remembering things or concentrating. He further testified that he panics, causing vomiting. Jacobs stated he often does not leave his room, not even to use the bathroom; instead, urinating and defecating into containers in his room. (A.R. at 48-50). Jacobs tries to help his mother, but cannot do much beyond carrying groceries or microwaving food. He loves basketball and biking but can rarely do either activity. (A.R. at 51). He has lost friends and has few social interactions. Jacobs testified that he rarely bathes and only dresses twice a week if he is leaving the house. (A.R. at 56-57). If he goes to the grocery store, it is at night to avoid interactions with people. (A.R. at 57). Jacobs described a good day as one where he only spent an hour or two crying. (A.R. at 58). The

5

ALJ finished her inquiry by asking Jacobs about his employment history and whether he maintained his law license. (A.R. at 62-63).[2]

In keeping with standard practice, the ALJ provided the vocational expert, Hardy, with several hypothetical situations. In the first situation she asked Hardy to assume a 41 year old, with an inactive law license, the work history that Jacobs described, with no exertional limitations who can "understand, remember and carry out simple, routine, repetitive instructions with no interaction with the general public and only superficial non-collaborative contact with coworkers" and occasional interactions with supervisors. (A.R. at 64). Hardy stated that the individual in this hypothetical situation could work as a kitchen helper, hand packager, or laborer (stores). (A.R. at 65). The ALJ then added the following limitations for a second hypothetical situation: "this person has no useful ability to complete a normal work day and work week without interruption from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of periods of rest." (A.R. at 65). Hardy responded that these limitations would preclude employment. The ALJ then returned to her first hypothetical individual, but asked Hardy to consider whether the following limitation would erode or preclude employment as a kitchen helper, hand packager, or laborer (stores): "if that individual had occasionally, so up to one-third of the day had difficulty sustaining attention and focus to those simple, routine, repetitive tasks." (A.R. at 66). Hardy responded that the additional limitation would preclude employment.

*C. The ALJ's Findings*

The ALJ found that Jacobs' depression and personality disorder are severe medically determinable impairments because they result in moderate difficulties in maintaining social functioning and concentration, persistence, or pace, but that they do not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. She concluded that Jacobs could

---

[2] This Court respectfully disagrees with the ALJ's insinuation that attending Continuing Legal Education classes does not require focus and attention.

6

perform work at all exertional levels and could perform work as a kitchen helper, hand packager, or laborer (stores).

In reaching her decision, the ALJ gave only some weight to Dr. Shikari's opinion, that Jacobs "has difficulty in social functioning" and would "likely… decompensate if exposed to perceived stress of a routine work setting and schedule." (A.R. at 25). Additionally, the ALJ gave little weight to the opinion of Michele Bailey, that Jacobs' mental health symptoms would "significantly impair his ability to perform work activities, maintain a schedule, make work-related decisions, [and] maintain regular attendance or punctuality." (A.R. at 25). The ALJ discounted this opinion, stating that the record does not support a finding that Jacobs has the inability to perform unskilled work tasks that do not require intense interpersonal contact. The ALJ also gave some weight to the State agency's psychological consultants, but found the record as a whole supports a finding that Jacobs' "mental impairments result in moderate restrictions in his activities of daily living but would not impair his ability to maintain attention and concentration for a period of at least two hours at a time, followed by normal breaks, throughout an eight-hour workday." (A.R. at 25).

With respect to Jacobs' testimony, the ALJ noted all of Jacobs' complaints, but found them not fully credible given his sporadic mental health treatment, his independent decision to stop taking Lexapro due to side effects, and his lack of compliance with treatment plans. (A.R. 23-24). Based on these findings, the ALJ accepted the vocational expert's testimony that Jacobs is capable of performing work as a kitchen helper, hand packager, or laborer (stores). The ALJ concluded that Jacobs is not disabled within the meaning of the Social Security Act, and is not entitled to benefits.

**Legal Standard**

This Court will reverse the Commissioner's finding only if it is not supported by substantial evidence or if it is the result of an error of law. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence means "such relevant evidence as a reasonable mind might accept as

7

adequate to support a conclusion." *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Although this Court reviews the record as a whole, it cannot "substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003); *Cass v. Shalala,* 8 F.3d 552, 555 (7th Cir. 1993). While the Court's review is deferential, it is not intended to be a rubber-stamp the Commissioner's decision. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

In rendering a decision, the ALJ must build a logical bridge from the evidence to her conclusion. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). "The ALJ need not, however, provide a 'complete written evaluation of every piece of testimony and evidence.'" *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005) (quoting *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995)). The ALJ "may not select and discuss only that evidence that favors [her] ultimate conclusion," *Diaz*, 55 F. 3d at 308, but "must confront the evidence that does not support [her] conclusion and explain why it was rejected." *Indoranto v. Barnhart,* 374 F.3d 470, 474 (7th Cir. 2004).

**Discussion**

Jacobs makes two arguments for reversal of the ALJ's determination that he is not disabled. First, Jacobs contends that the ALJ failed to give the proper weight to the opinions of Jacobs' treating psychiatrist and therapist. Second, Jacobs argues that the ALJ made an improper credibility determination when she found his testimony not credible. The Commissioner argues that this Court should affirm the ALJ's determination that Jacobs is not disabled because it is supported by substantial evidence and the ALJ sufficiently explained her reasoning so as to build a "logical bridge" between the medical evidence and her conclusion.

A person is disabled under the Social Security Act if he "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

8

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(I). The Social Security Administration has set forth a five-step sequential evaluation process for determining whether an individual is disabled (20 C.F.R. 404.1520(a)). The process of evaluation is as follows: "(1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he can perform past relevant work, and (5) whether the claimant is capable of performing any work in the national economy." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see* 20 C.F.R. § 404.1520.

"An ALJ must give 'controlling weight' to a treating source's opinion if it is 'well-supported' by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." *Punzio v. Astrue,* 630 F.3d 704, 710 (7th Cir. 2011); 20 C.F.R. §404.1527(d)(2). If an ALJ rejects a treating physician's opinion, she must explain her reasoning with reference to the following factors: "the length, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); *see also* 20 C.F.R. 404.1527(c)(2).

The ALJ noted that Dr. Shikari's assessment was generally consistent with the medical records, but pointed to moderate GAF scores that Dr. Shikari assigned on the most recent assessment as indicative of Jacobs' symptoms not being as severe as Jacobs claimed in his testimony. The Seventh Circuit has repeatedly stated, "a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about [his] overall conditions." *Punzio,* 630 F.3d at 710 (citing *Larson,* 615 F.3d at 751; *Wilson v. Astrue,* 493 F.3d 965, 967-68 (8th Cir. 2009); *Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006). The ALJ also

9

discounted the opinion of Michele Bailey, Jacobs' therapist, who stated that Jacobs' mental health symptoms would "significantly impair his ability to perform work activities, maintain a schedule, make work-related decisions, [and], maintain regular attendance or punctuality." The ALJ dismissed this opinion without adequate explanation, stating that it might be true for more detail oriented work, but not unskilled work that does not require intense interpersonal contact. The ALJ seems to base her decision not on the medical records or opinions provided, but on her own assessment of Jacobs' credibility.

Turning to the ALJ's assessment of Jacobs' credibility, throughout the hearing the ALJ appears to disbelieve the severity of his symptoms. In assessing Jacobs' credibility, the ALJ must first determine whether the symptoms are supported by medical evidence. *See* SSR 96-7 p. at *2; *Arnold v. Barnhart,* 473 F.3d 816, 822 (7th Cir. 2007). If not, SSR 96-7p requires the ALJ to consider "the entire case record, including the objective medical evidence, the individual's own statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and other relevant evidence in the case record." *Arnold,* 473 F.3d at 822; *See also* 20 C.F.R. §404.1529. The ALJ's credibility determination should be reversed only if "patently wrong." *Castile v. Astrue,* 617 F.3d 923, 929 (7th Cir. 2010); *Elder v. Astrue,* 529 F.3d 408, 413-14 (7th Cir. 2008); *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).

Here, the ALJ found Jacobs' statements concerning the intensity, persistence and limiting effects of these symptoms are not credible because they are inconsistent with Dr. Shikari's most recent RFC assessment of only moderate symptomology. The ALJ noted sporadic mental health treatment and has not benefitted much from either therapy or medicine. (A.R. at 24). It is unclear why the ALJ thought this fact undermined Jacobs' description of severity of symptoms. Further, the ALJ found the lack of changes in his medication suggested that he was not experiencing the side effects that he claimed. She found this in light of Jacobs' independent decision to discontinue one of

10

his medications because he did not think it was effective. She also pointed to gaps in treatment as suggesting Jacobs does not need treatment. This conclusion ignores both the record evidence and testimony that Jacobs does not have insurance coverage, relies on his parents to pay for treatment, and experienced program funding cuts that interfere with his treatment. This conclusion further ignores the well-known difficulty of patient compliance with mental health treatment. *See Spiva v. Astrue,* 628 F.3d 346, 351 (7th Cir. 2010).

The ALJ also expressed doubt that Jacobs spends most of his time in bed and mostly stays in his room based on a lack of muscle atrophy indicating that he was bedridden. Yet, Jacobs never testified or claimed to be immobilized. Jacobs testified extensively to rarely bathing, dressing, and leaving the house. The ALJ provided no explanation in her decision for doubting Jacobs' testimony regarding his self-care. Mental health issues often lack diagnostic evidence; instead, mental health professionals rely on patients' own descriptions of the manifestations of their illness. Dr. Shikari specifically noted that Jacobs is not a malingerer. (A.R. at 440). As the Seventh Circuit observed in *Bjornson v. Astrue*: "The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons… and is not held to a minimum standard of performance as [he] would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." *Bjornson v. Astrue,* 671 F.3d 640, 647 (7th Cir. 2012) (collecting cases).

It appears that the ALJ here simply did not believe Jacobs' testimony despite the medical records from Dr. Shikari and Michele Bailey supporting his testimony. It further seems that the ALJ ignored many of Jacobs' symptoms and emphasized the gaps in treatment and lack of improvement as indicative of exaggeration of his depression rather than indicative of its severity. This Court finds

that the ALJ failed to base her decision on substantial evidence and did not provide adequate explanation for her finding that Jacobs' is not disabled.

Based on the foregoing analysis, this Court denies the defendant's motion [16], grants plaintiff's motion [8], and remands the matter for further consideration by the agency.

IT IS SO ORDERED.

ENTERED:

Dated: March 15, 2017

SHARON JOHNSON COLEMAN
United States District Judge